The Law Offices of Avrum J. Rosen, PLLC
Counsel to the Debtor
38 New Street
Huntington, New York 11743
631 423 8527
Avrum J. Rosen
Fred S. Kantrow

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re:

    W25 LLC,                                       Chapter 11
                                                Case No.  12-14526- smb
                           Debtor.
-------------------------------------------------------x

**~~SECOND~~ THIRD AMENDED DISCLOSURE STATEMENT FOR THE
PLAN OF REORGANIZATION FILED BY THE DEBTOR**

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION
OF THE PLAN.  ACCEPTANCES OR REJECTIONS MAY NOT BE
SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN
APPROVED BY THE BANKRUPTCY COURT.  THIS DISCLOSURE
STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT
BEEN APPROVED BY THE COURT.**

       This ~~Second~~ Third Amended Disclosure Statement ("Disclosure Statement") is being provided by W25 LLC, the Debtor and Debtor-in-Possession (the Debtorö), by its counsel, The Law Offices of Avrum J. Rosen, PLLC, pursuant to the requirements of Section 1125(f)(3) of the Bankruptcy Code (the õBankruptcy Codeö), to those known holders of a claim or interest who are entitled to vote on the confirmation of the ~~Second~~ Third Amended Plan of Reorganization (the "Plan") proposed by the Debtor in order to disclose adequate information, deemed to be material, important and necessary for the Debtor's creditors ("Creditors") to make an informed judgment and an informed decision in exercising their right to vote on the Plan.

       Along with this Disclosure Statement, you will receive a copy of the proposed Plan, a Ballot and a Notice fixing a date for a hearing on the confirmation of the Plan.  Annexed to this Disclosure Statement or available on-line at the Courtøs electronic website  www.nysb.uscourts.gov are the following exhibits:

       Exhibit "A":    Plan of Reorganization;
       Exhibit "B":    Copy of the petition and schedules the Debtor;
       Exhibit õC":    Purchase and Sale Agreement
       Exhibit õDö:    Financial Information concerning Purchaser.

       The Bankruptcy Court has not yet scheduled a hearing on confirmation of the Plan.  The date, time and place of the hearing will be found in the õNotice Fixing a Date for a Hearing on Confirmation,ö which accompanies this notice.  ~~The Creditors may vote on the Plan by completing and mailing the enclosed ballot to the attorneys for the Debtor, The Law Offices of Avrum J. Rosen, PLLC, 38 New Street, Huntington, New York 11743.~~ Please see Part XII for an explanation of the voting process and Confirmation of the Plan.

       In order for the Plan to be accepted and thereafter confirmed, <ins>it must meet the requirements of the</ins>

1

Bankruptcy Code.  Under the Plan, there are no impaired classes entitled to vote.  If the Bankruptcy Court were to determine that there are classes entitled to vote ("confirmation"), at least two-thirds (2/3) in amount and more than one-half (½) in number of allowed claims of each class of creditors who vote and who are impaired under the Plan must cast their vote for the acceptance of the Plan.  A CREDITOR WHO DOES NOT VOTE FOR THE ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT COUNT IN THE OUTCOME OF THE PLAN'S ACCEPTANCE.

Under the proposed Plan, None of the Classes of Creditors are impaired.

**THIS DISCLOSURE STATEMENT IS THE ONLY AUTHORIZED STATEMENT WITH RESPECT TO THE PLAN.  NO OTHER REPRESENTATIONS CONCERNING THE DEBTOR, ITS OPERATIONS OR THE VALUE OF ITS PROPERTY HAVE BEEN AUTHORIZED BY THE DEBTOR. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO OBTAIN YOUR ACCEPTANCE WHICH ARE OTHER THAN OR INCONSISTENT WITH THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION. THIS DISCLOSURE STATEMENT HAS BEEN CONDITIONALLY APPROVED BY ORDER OF THE BANKRUPTCY COURT.  SUCH APPROVAL BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A RECOMMENDATION BY THE COURT AS TO THE PLAN'S MERITS.**

The Debtor and its counsel have prepared the Chapter 11 Plan and submit that this Plan is in the best interest of Creditors generally and recommend acceptance of the Plan by those Creditors who vote.  It is the belief of the Debtor that if the Plan is denied confirmation, unsecured Creditors will receive less than they will receive under the Plan. This Disclosure Statement has been approved by the Court as containing information of a kind and in sufficient detail that will enable Creditors to make an informed judgment about the Plan, and the Debtor has been authorized to use this Disclosure Statement in connection with the solicitation of ballots on the Plan.  At a hearing on confirmation the Court will consider whether the Plan is feasible, and whether it is in the best interests of the Creditors.

## PART I
## DEFINITIONS

For the purposes of this Disclosure Statement, the terms used herein shall be defined as they are defined in the Debtor's Plan of Reorganization.

## PART II
## PRELIMINARY STATEMENT

On November 6, 2012 (the õPetition Dateö), W25 LLC, the above-referenced Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  W25 LLC is the owner of real property known as 119 West 25th Street, New York, New York. The Debtor is operating its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code has been appointed.

## PART III
## RETENTION OF PROFESSIONALS

The Debtor has submitted an application to retain The Law Offices of Avrum J. Rosen, PLLC, as counsel to the Debtor on November 30, 2012 *nunc pro tunc* to the date of the filing of the Petition.  That Order was granted by Order dated December 3, 2012.  The Debtor will be submitting a retention application for special real estate counsel for the sale of the Debtorøs property. In addition, the contract identifies a broker ( Carlo Valencia)  and Isaac Hershko, as having brought about the transaction.  They will be paid from the proceeds of the Sale that is being disbursed to Interest Holders and will be retained by Court order to the extent required by statute.

### PART IV
### REPRESENTATIONS AND SCOPE OF STATEMENT

The information contained herein has not been subject to a certified audit, and accordingly, the Debtor is unable to warrant or represent that the information contained herein is without any inaccuracies. The Debtor believes that the information contained herein is accurate and has verified its accuracy to the extent possible.

### PART V
### DESCRIPTION OF THE DEBTOR AND ITS BUSINESS

W25 Mezz, LLC, is the sole member and managing member of the Debtor. W25 LLC ("Debtor"), is a Delaware limited liability corporation and is an owner, engaged in the ownership and development of the commercial real property located at 119 West 25th Street, New York, New York ( the "Property"). The Debtor's offices are located at 221 Canal Street, Suite 303, New York, New York 10013

### PART VI
### EVENTS LEADING TO AND SUBSEQUENT TO THE FILING OF THE BANKRUPTCYCASE

The Debtor's current problems arose as a result of the general downturn in the economy. The Debtor, together with its affiliates, was involved in the lengthy and expensive process of having the commercial tenants vacating this Property and engaging in different negotiations for the development of its parcel. Since the collapse of the real estate market, the Debtor has been unable to obtain the financing needed to complete this building. The site is extremely desirable for various commercial or residential developments as it is it is in one of the most desirable areas in New York City. As a result of the delay, the mortgage on the property has gone into default. LL 25 Penny, LLC, upon information and belief, an entity formed by individuals interested in developing the property, is the holder of the mortgage as to the real property. That entity took it by assignment from Cathay Bank.

A foreclosure sale of the assets of the Debtor was scheduled for November 7, 2012. Pursuant to the Judgment of Foreclosure and Sale, the amount claimed to be due by the mortgagee is $40,801,123.68 as of January 12, 2012 plus additional interest, costs, charges and disbursements. LL 25 Penny, LLC has filed a claim in this case for the sum of $43,596,331.48. It has already applied, a $3,000,000.00 (plus interest) certificate of deposit, which was collateral security for this loan.

Over the last several months prior to and subsequent to the Filing Date, the Debtor has been negotiating with a number of developers interested in either purchasing or entering into a joint venture with the Debtor, for the development of the Property.

These negotiations have led to the Purchase and Sale Agreement (the "Agreement") annexed hereto as Exhibit "C", which provides, in a private sale, not subject to higher and better offers, for the payment of all Claims in full with interest at the contract rate and if no contract rate, then interest at the Federal Judgment Rate in effect on the Effective Date. Information as to the Purchaser's financial wherewithal to close the sale is annexed hereto as Exhibit "D". The Agreement provides for either the satisfaction or the assignment of the first mortgage to the Purchaser or its Designee, the payment of all taxes and assessments on the property; the payment of $500,000 for other debts of the Debtor; and the payment of $10,000,000.00 to the Debtor. Parties should review the Agreement in full to understand the terms and conditions of the sale.

The Debtor submitted an Application for a "Bar Date" Order, which would set a date for the filing of all claims. That Order was entered and then amended to set a date of February 13, 2013 for the filing of all Claims. An unliquidated claim asserting a right to the property was filed by 125 West 25th LLC, and that purported creditor has filed objections to the original Disclosure Statement. The Debtor objected to this claim in its entirety and scheduled the hearing on that objection to be heard on~~for~~ April 23, 2013. After the hearing on the adequacy of the original

3

disclosure statement, the parties engaged in settlement negotiations. Those negotiations resulted in an agreement to give 125 West 25th LLC an Allowed Unsecured Claim, as of the Effective Date of $100,000.00. That creditor ~~will~~ file<ins>d</ins> an amended claim in the amount of $100,000.00. The debtor ~~will~~ withdr<ins>ea</ins>w its objection to that claim, and it will be an Allowed Unsecured Claim.

**PART VII**
**DESCRIPTION OF THE PLAN**

THIS PART PRESENTS ONLY A SUMMARY OF THE PLAN OF REORGANIZATION PROPOSED BY THE DEBTOR. CREDITORS ARE URGED TO READ THE PLAN IN FULL AND TO CONSULT WITH COUNSEL AS TO ITS CONTENT. THE PLAN REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT BETWEEN THE DEBTOR AND HIS CREDITORS.

**CLASSIFICATION OF CLAIMS AND INTERESTS**

**STATUTORY CLAIMS**

The claims of the United States Trustee, pursuant to statute, 28 U.S.C. § 1930(a)(6) is included as a Statutory Claim. All outstanding quarterly fees and any applicable interest owed to the Office of the United States Trustee shall be paid in full on the Effective Date of the Plan. In addition, the Debtor shall continue to incur and pay quarterly fees and any applicable interest until the entry of the "Final Decree" or dismissal or conversion whichever occurs first. Unpaid United States Trustee's fees accrue interest that is an expense of the Estate. The Debtor shall comply with the reporting requirements of the office of the United States Trustee until the entry of a Final Decree and shall file quarterly reports on January 15, April 15, July, 15 and October 15 of each year until entry of a Final Decree.

Administrative Expense Claims. Administrative Expense Claims are not classified under the Plan in accordance with section 1123(a)(1) of the Bankruptcy Code. Each Allowed Administrative Expense Claim shall be paid in full in Cash on the later of (a) the Effective Date, or (b) in the event such Administrative Expense Claim is not Allowed as of the Effective Date, the date on which the Bankruptcy Court enters an order allowing such Administrative Expense Claim, or (c) such later date as the Debtor (or, if it is after the Effective Date, the Post-confirmation Debtor) and the Holder of such Allowed Administrative Expense Claim otherwise agree in writing, or as soon thereafter as is practicable; *provided, however*, that Allowed Administrative Expense Claims incurred by the Debtor or the Post-confirmation Debtor after the Confirmation Date, including, without limitation, claims for Professionals' Fees, shall not be subject to application and may be paid by the Debtor or the Post-confirmation Debtor, as the case may be, in the ordinary course of business and without further Bankruptcy Court approval.

Any Claimant seeking allowance of an Administrative Expense Claim for an Administrative Expense Claim the amount of which is not agreed to in writing by the Debtor or the Post-confirmation Debtor and the Claimant, or otherwise Allowed by a Final Order, <u>must</u> file proof of its Administrative Expense Claim with the Bankruptcy Court and serve a copy thereof upon (a) the Debtor's counsel, Law Offices of Avrum J. Rosen, PLLC, Attn: Avrum J. Rosen, Esq., and (c) the United States Trustee, no later than fifteen (15) days following the Confirmation Date; *provided, however*, that with respect to any such timely filed Administrative Expense Claim, such Claim shall be Allowed only if (i) the amount is agreed to in writing by the Debtor or the Post-confirmation Debtor and such Claimant, (ii) no objection to the allowance thereof is interposed by the Debtor or the Post-confirmation Debtor on or before thirty (30) days after the Effective Date, or such other date as may be established by the Bankruptcy Court, or (iii) if an objection is interposed, (x) such Administrative Expense Claim has been allowed by a Final Order, or (y) such objection is withdrawn. With respect to Claimants seeking allowance of Professional Fees as Administrative Expense Claims, all applications for final compensation of Professionals for services rendered and for reimbursement of expenses incurred for any period prior to the Confirmation Date must be filed no later than thirty (30) days following the Confirmation Date, and shall be deemed Allowed following entry by the Bankruptcy Court of any final order or orders allowing same.

**Treatment of Priority Tax Claims**

<u>Priority Tax Claims</u>. As of the filing of the Plan, no Priority Tax Claims were filed. Those Claims were listed in the Debtor's Schedules in the approximate amount of $1,666,713.41. Any Allowed Priority Tax Claims consisting of Real Estate Taxes, Water and Sewer Charges and Environmental Control Board Violations will be paid by the Purchaser, defined below, in full, on the Effective Date, with statutory interest pursuant to Section 2.1 of the Agreement. Any other tax claims, of which the Debtor believes there are none, shall be paid by the Debtor from the proceeds of the sale, with statutory interest.

**The Allowed Claims against the Debtor are divided into the following classes:**

<u>Class 1.</u>    Class 1 consists of the Allowed LL 25 Penny, LLC Secured Claim, which is secured by a valid mortgage Lien against the Real Property.

<u>Class 2.</u>    Class 2 consists of all General Unsecured Claims.

<u>Class 3.</u>    Class 3 consists of all Interests.

**ARTICLE VIII**

**Treatment of Claims and Interests**

<u>Class 1</u>:  <u>Secured Claim</u>

<u>Treatment</u>. Class 1 consists of the Allowed Secured Claim of LL 25 Penny, LLC which has obtained a judgment of foreclosure. The Purchaser under the Agreement in Section 2.1 and Section 12.1(g), Tribeca Equities, LLC ("Purchaser") shall have its affiliate WB 25th Street Holdings, LLC ("WB") on, or prior to, the Effective Date, advance sufficient funds to either discharge the mortgage/judgment: have its Designee take the mortgage of LL 25 Penny, LLC by assignment; and/or obtain a new mortgage on the premises and use those proceeds to satisfy the prior mortgage.  If the mortgage and note are assigned, the sale of the Property shall be subject to the assigned mortgage. WB and  LL 25 Penny, LLC have entered into an agreement to sell this claim to WB. The terms of this transfer have not been disclosed to the Debtor. If for any reason, that sale does not take place on the Effective Date, <u>or as soon as practicable thereafter, but in no event longer than two (2) business days from the Effective Date,</u> LL 25 Penny, LLC shall be free to exercise all of its state law rights against the Debtor and the Debtor's Property to the full extent required by 11U.S.C. § 1124(1). <u>Under the Agreement with the Purchaser, the sale by the Debtor and the consideration to be paid by the Purchaser to the Debtor , are not contingent upon the performance by either party to the agreement between WB and LL 25 Penny, LLC.  Purchaser is still required to close under the Agreement and to pay the full consideration to the Debtor.  In that event, Purchaser will take title to the Property subject to all of LL 25 Penny LLC'c liens, claims, rights, title and interests including without limitation all of its liens, claims, rights, title and interests under that certain foreclosure judgment.  Further, Insider Claims and Equity have agreed that they shall not receive any distribution under the Plan until the sooner to occur of (i) the closing of the WB/ LL 25 Penny transaction or the (ii) foreclosure sale of the Property.</u> The Provisions of the Plan relating to an Injunction and any statutory stay shall not apply to LL 25 Penny, LLC. <u> LL 25 Penny, LLC has consented to this treatment under the Plan.</u>

Class 1 is not impaired under the Plan

3.2    Class 2:  <u>General Unsecured Claims</u>.

5

Treatment.  Class 2 consists of all Allowed General Unsecured Claims, ~~including mechanics' liens filed against the real property~~. It does not include any violations filed against the Property as the Property is being transferred subject to those violations, pursuant to Section 7.1 of the Agreement.  It does include the non-insider scheduled claims of $400,123.83 and the Allowed Unsecured Claim of 125 West 25th LLC in the amount of $100,000; <ins>together with Allowed Unsecured Claims of Insider's scheduled in the amount of $2,877,500.00.</ins>

Each Holder of an Allowed Claim in Class 2 shall be entitled to receive its Allowed Claim, in full, within ten (10) business days of the Effective Date, with interest at any contract rate agreed to by the parties, and if there is no such agreement, then at the Federal Judgment Rate in effect on the Effective Date from the date of the filing of the petition to the date of payment. Payment shall be made from the $500,000.00 reserve for said payments contained in Section 2.1 of the Agreement.  To the extent this amount of $500,000.00 is not sufficient to make all payments under this section; payments shall be made from the $10,000,000.00 payment being made to the Debtor as part of the consideration for this sale to make the distributions to this Class.  ~~Thereafter, Allowed Unsecured Claims of Insider's claims scheduled in the amount of $2,877,500.00 shall be paid with interest as set forth above.~~ <ins>As set forth in the treatment of Class 1, the Insider Creditors have agreed not toe receive payment on their claims, in the event of a default by purchaser, until the State Court Auction has occurred.</ins>

Full Settlement.  The treatment and consideration to be received by Holders of Allowed Class 2 Claims shall be in full settlement and final satisfaction of their respective Claims.

Class 2 is not impaired under the Plan.

3.3.   Class 3: Interests.

Treatment.    Class 3 consists of Allowed Interests in the Debtor.  Class 3 consists of the Allowed Claim of the member of the Debtor. This Class shall receive $10,000,000.00, less any amounts needed to make payments to Class 2 in excess of the $500,000.00 set forth in Section 2.1 of the Agreement and shall retain its interest in the Debtor.  In addition, Miriam Chan shall receive a 1% interest in the Purchaser as set forth in Section 18.9 of the Agreement. <ins>As set forth in the treatment of Class 1, Equity has agreed that, in the event of a default by Purchaser, it shall not receive any distribution until after the Stae Court Auction has taken place.</ins>

This Class is not impaired.

**PART VIX**
**MEANS FOR EXECUTION OF THE WITHIN PLAN**

The Premises shall be sold, pursuant to the Agreement, at a private sale to be consummated on the Effective Date.

The transfer of the Premises pursuant to the Plan, will be effectuated in the following manner. The Premises will be transferred to the Purchaser,  subject to the existing judgment/ mortgage of LL 25 Penny, LLC, but free and clear of any other junior liens to that of LL 25 Penny, LLC, with said liens to attach to the proceeds and free and clear of any transfer taxes  pursuant to §1146(a) .  All filing officers (including all filing officers in the City of New York) shall accept for recording and to record any and all documents or instruments that are necessary to implement the Plan, including, but not limited to, those documents necessary to facilitate the closing of the proposed transfer of the Debtor's Premises to the Nominee without the payment of any Exempt Taxes.

The Debtor reserves the right to treat this sale pursuant to a Section 1031 of the Internal Revenue Code pursuant to Section 18.8(a) of the Contract.

The transfer of the Debtor's Property excludes any and all recoveries under chapter 5 of the Code which

6

will remain property of the Debtor's Estate.

## PART X
## TREATMENT OF EXECUTORY CONTRACTS

Assumption and Rejection of Executory Contracts and Unexpired Leases. As of the Confirmation Date, any executory contract or unexpired lease that has not been expressly assumed or rejected with approval by order of the Bankruptcy Court shall be deemed to have been rejected unless (a) there is then pending before the Bankruptcy Court a motion to assume such unexpired lease or executory contract, or (b) the Bankruptcy Court has entered an order extending the period during which a motion may be made to assume such unexpired lease or executory contract, and such a motion is filed with the Bankruptcy Court before the expiration of such period(c) the Purchaser has elected to assume such contract in the Agreement. The Disclosure Statement and the Plan shall constitute due and sufficient notice of the intention of Debtor to reject all executory contracts and unexpired leases that are not otherwise assumed. The Confirmation Order shall be deemed an order under section 365(a) of the Bankruptcy Code rejecting any such executory contracts and unexpired leases that are not otherwise assumed, subject to the rights of any tenants pursuant to §365(h)(1)(A).

Bar Date for Rejection Damage Claims. Unless otherwise provided for by an order of the Bankruptcy Court entered on or prior to the Confirmation Date, any Rejection Damage Claim for an executory contract or unexpired lease rejected by the Plan must be filed with the Bankruptcy Court within thirty (30) days of the Confirmation Date. Any Entity that fails to file its Rejection Damage Claim within the period set forth above shall be forever barred from asserting a Claim against the Debtor, the Estate, or any Property or interests in Property of the Debtor or the Post-confirmation Estate. All Allowed Rejection Damage Claims shall be classified as General Unsecured Claims (Class 2) under the Plan.

## PART XI
## INJUNCTION, RELEASE AND EXCULPATION

Injunction. Except as otherwise provided in or to enforce the Plan or Confirmation Order, on or after the Effective Date all Entities, except as set forth in the treatment of Class I and specifically the claim of LL 25 Penny, LLC, that have held, currently hold, or may hold, a Claim, Lien, Interest or other liability against or in the Debtor that would be discharged or satisfied upon confirmation of the Plan and the Effective Date but for the provisions of Bankruptcy Code § 1141(d)(3) are permanently enjoined from taking any of the following actions on account of such Claim, Lien, Interest or right: (a) commencing or continuing in any manner any action or other proceeding on account of such Claim, Lien, Interest, or right against the Property that is to be distributed under the Plan,; or (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Property to be distributed under the Plan.

~~On and after the Effective Date, each Holder of an Interest in the Debtor is permanently enjoined from taking or participating in any action that would interfere with or otherwise hinder the post-confirmation Debtor or Post-confirmation Debtor from implementing the Plan or the Confirmation Order.~~

~~Except as otherwise provided in the Plan or the Confirmation Order, on or after the Effective Date all Creditors of, Claimants against, Interest Holders of, and Entities having or claiming an interest of any nature in the Post-confirmation Estate are hereby permanently enjoined and stayed from pursuing or attempting to pursue any action, commencing or continuing any action, employing any process, or any act against any Property that is to be distributed under the Plan on account of or based upon any right, claim or interest which any such Creditor, Claimant, Interest Holder, or other Entity may have had prior to the entry of the Confirmation Order.~~

7

**Exculpation.** In consideration of the Distributions under the Plan, upon the Effective Date, each Holder of a Claim or Interest will be deemed to have released the Debtor, and each of its directors, partners, members, officers, agents, consultants, attorneys, independent accountants, advisors, Professionals, financial advisors, investment bankers and employees (in such capacity), employed by the Debtor from and after the Filing Date from any and all Causes of Action (other than the right to enforce the obligations under the Plan and the right to pursue a claim based on any gross negligence or willful misconduct, including any breach of fiduciary duty constituting gross negligence or willful misconduct) arising out of actions or omissions during the administration of the Chapter 11 Case, the administration of the Estate and/or the Post-confirmation Estate, or the Distribution of any Property or Post-confirmation Estate Assets pursuant to the Plan to the extent provided in 11 U.S.C. §1125( e).

## PART XII
## METHOD FOR DETERMINATION OF ALLOWED CLAIMS

The Plan provides for payment to be made only to holders of "allowed" claims, in the various classes[1]. As

---

[1] The term "allowed claims" is defined in the Plan as follows:

"1.4  "Allowed Claim" means, (1) any Claim listed on debtor's schedules as filed in connection with its reorganization case which is liquidated in amount and is not designated as contingent or disputed and/or, (2) any Claim against debtor, proof of which was filed on or before the bar date for filing claims against debtor's estate, against which filed claim no objection to the allowance thereof has been or is interposed, or as to any such objection there has been a final Order entered and/or (3) any claim against debtor which is reduced to writing, consented to by debtor and liquidated in amount, which writing has been approved by a final Order."

"Impairment of claims" is defined in the Plan as follows:

"1.31  "Impairment of Claims or Interest" - The classes of claims set forth hereafter are described as "impaired" or not "impaired".  Impairment is defined in Section 1124 of the Code as follows:

Section 1124.  Impairment of claims or interests
Except as provided in Section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan - -
(1)     leaves unaltered the legal, equitable and contractual rights to which such claim or interest entitles the holder of such claim or interest;
(2)     notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default - -
        (A)     cures any such default that occurred before or after the commencement of
                the case under this title, other than a default of a kind specified in section

8

to claims incurred prior to the filing date, there are three avenues by which such claims may become "allowed" claims entitled to payment under the Plan.  First, if a claim is listed in Debtor's Chapter 11 schedules (previously filed with the Court and annexed hereto as Exhibit "B" for reference) it is automatically allowed unless those schedules denominate that particular claim as "contingent", "unliquidated", or "disputed", or unless an objection thereto is filed with the Court and served upon the claimant.  If an objection is interposed, the validity and amount of the claim will be determined by the Bankruptcy Court, following a hearing.

The second method by which a claim may be allowed is by the filing of a "proof of claim" with the Bankruptcy Court.  If the claim is not disputed or objected to, it is deemed allowed.  Such filing is required in order to assert any claim not included in the schedules, and for any claim denominated therein as "contingent", "unliquidated", or "disputed".

The third manner in which a claim may be determined to be "allowed" is by Order of the Court, after the litigation of a filed objection (or by stipulation settling such litigation setting forth an agreed liquidated claim and which is thereafter "so ordered" by the Court).

## PART XIII
## VOTING IMPAIRMENT, CONFIRMATION AND CRAMDOWN

A. Voting:

Claimants with allowed impaired claims are entitled to vote to accept or reject the Plan.  A claimant who fails to vote to either accept or reject the Plan will not be included in the calculations regarding the acceptance or rejection of the Plan.

Classes which are not "impaired" under the Plan, pursuant to Section 1126(f) of the Bankruptcy Code, are presumed to have accepted the Plan.  However, said claimants may rebut this presumption. The proponent believes that none of the Classes are impaired.

If the Court determines that any class is impaired then a ballot to be completed by the holders of Claims will be enclosed herewith.  Instructions for completing and returning the ballots are set forth thereon and should be reviewed at length.  The Plan will be confirmed by the Bankruptcy Court and made binding upon all claimants if, with respect to all classes of claimants, the Plan is accepted by the holders of two-thirds (2/3) in amount and more than one half (½) in number of allowed claims in each such classes voting upon the plan.

B.    Confirmation Without Acceptance by All Impaired Classes, Cramdown.

---

```
            365(b)(2) of this title;
      (B)     reinstates the maturity of such claim or interest as such maturity existed
      before such default;
      ©       compensates the holder of such claim or interest for any damages incurred
      as a result of any reasonable
      reliance by such holder on such contractual provision or such applicable law; and
      (D)     does not otherwise alter the legal, equitable or contractual rights to
      which such claim or interest entitles the holder of such claim or interest; or
(3)    provides that, on the effective date of the plan, the holder of such claim or
interest receives, on account of such claim or interest, cash equal to - -
      (A)     with respect to a claim, the allowed amount of such claim; or
      (B)     with respect to an interest, if applicable, the greater of - -
            (I)     any fixed liquidation preference to which the terms of any security
            representing such interest entitle the holder of such interest; or
            (ii)    any fixed price at which the debtor, under the terms of such
            security, may redeem such security from such holder."
```

9

Generally, if a Plan is not accepted by all impaired classes, it may nevertheless be confirmed by the Bankruptcy Court if (I) the Plan is accepted by at least one impaired class and it meets all of the other requirements of Section 1129(a) of the Bankruptcy Code; (ii) the Plan does not discriminate unfairly; and (iii) the Plan is fair and equitable to the rejecting classes. Such a finding would require a determination by the Bankruptcy Court that the Plan meets the requirements of Section 1129(b) of the Bankruptcy Code, including that no holder of any claim or interest junior to the claims of the rejecting class is receiving or retaining any property or payment under the Plan solely on account of such claim or interests. This requirement is generally referred to as the "absolute priority rule".

The "cramdown" provisions for confirmation of a Plan despite the non-acceptance of one or more impaired classes of the claims or interest are set forth in Section 1129(b) of the Bankruptcy Code. Section 1129(b)(1) of the Bankruptcy Code states:

> "Notwithstanding section 510(1) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to the Plan, the Court, on request of the proponent of the Plan, shall confirm the Plan notwithstanding the requirements of such paragraph if the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan."

The proponent does not represent that the "cramdown" provisions would allow the confirmation of the Debtor's Plan. That determination should be made after a review of the information contained herein.

C. The Confirmation Hearing

The Bankruptcy Court will schedule a hearing to approve the Disclosure Statement and for Confirmation of the Plan (the "Hearing"). The Hearing will be held before United States Bankruptcy Judge Stuart M. Bernstein, at the United States Bankruptcy Court, Southern District of New York, United States Custom House, One Bowling Green, New York, New York. The Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of such adjournment in open Court. At the Hearing, or at any adjourned hearing thereof, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether it is feasible and whether it is in the best interests of holders of claims and interests. The Bankruptcy Court will also receive and consider a certification of ballots prepared on behalf of the proponent concerning the results of the vote.

## PART XIV
## POTENTIAL AVOIDANCE AND OTHER SIMILAR CASES

Since the Debtor is paying all Claims on the Effective Date, with interest, it will not be commencing any avoidance actions.

## PART XV
## DISCUSSION OF COMPARATIVE RECOVERIES

To determine what might be recovered by an unsecured (Class 3) creditor, in a Chapter 7 liquidation case, the following steps should be taken:

(i)     determine the dollar amount that would be generated from the liquidation by forced sale of the debtor's assets by a Chapter 7 Trustee; and

(ii)    subtract the balance due the secured creditors, the estimated costs of the liquidation (including the Chapter 7 trustee's fees and the fees of professionals employed by the Chapter 7 trustee), the unpaid expenses of the reorganization proceeding and other bankruptcy priority obligations (such as priority wage, union and tax

10

obligations).

These and any other claims arising in the liquidation, or from the current reorganization proceedings, must be paid in full before any funds would be made available to pay unsecured creditors. The value of the distribution resulting from a liquidation (after subtracting the amounts described above) may then be compared with the recovery estimated to be forthcoming under the Plan.

In the event of a Chapter 7, the only asset to liquidate would be the real property. The Debtor believes that it has obtained maximum value by negotiating with multiple potential purchasers and agreeing to a private sale to the highest bidder.

Moreover, if the sale is accomplished via a confirmed plan of reorganization, there will be a savings of the transfer tax to both New York State and New York City, which is not available in a Chapter 7 proceeding. Thus, unsecured creditors will receive more under the plan than they would in a Chapter 7 proceeding.

## PART XVI
## TAX CONSEQUENCES

The Debtor is not aware of any tax consequences that may result from the confirmation of this Plan. However, individual creditors may have a bad debt deduction to the extent that their claims are not paid in full. In addition, Insider creditors may have deductions based upon bad debt deductions or may have income tax due based upon the forgiveness of debt as it concerns their personal liability on certain of the Insider mortgages and notes. Creditors and Equity Holders are instructed to consult their own tax advisors. The following discussion summarizes certain U.S. federal income tax consequences of the implementation of the Plan to the Debtor and to certain holders of Claims .The following summary is based on the IRC, Treasury Regulations promulgated thereunder, judicial decisions, and published administrative rules and pronouncements of the IRS, all as in effect on the date hereof. Changes in such rules or new interpretations thereof may have retroactive effect and could significantly affect the U.S. federal income tax consequences described below.

The U.S. federal income tax consequences of the Plan are complex and are subject to significant uncertainties. The Debtor has not requested a ruling from the IRS or an opinion of counsel with respect to any of the tax aspects of the Plan. Thus, no assurance can be given as to the interpretation that the IRS will adopt. In addition, this summary generally does not address foreign, state or local tax consequences of the Plan, nor does it address the U.S. federal income tax consequences of the Plan to special classes of taxpayers (such as foreign taxpayers, broker-dealers, banks, mutual funds, insurance companies, other financial institutions, small business investment companies, regulated investment companies, tax-exempt organizations, persons holding an equity interest as part of an integrated constructive sale or straddle, and investors in pass-through entities).

**Accordingly, the following summary of certain U.S. federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the individual circumstances pertaining to a holder of a Claim.**

**IRS Circular 230 Notice: To ensure compliance with IRS Circular 230, holders of Claims are hereby notified that: (A) any discussion of U.S. federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by holders of Claims for the purpose of avoiding penalties that may be imposed on them under the Tax Code; (b) such discussion is written in connection with the promotion or marketing by the Debtor of the transactions or matters addressed herein; and (c) holders of Claims should seek advice based on their particular circumstances from an independent tax advisor.**

## PART XVII
## UNCLAIMED DIVIDENDS

11

(a)  All Distributions under the Plan to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth on the lists to be provided by the Debtor to the Post-confirmation Debtor unless the Post-confirmation Debtor has been notified in writing after the Effective Date of a change of address.  Any Entity that is entitled to receive a Cash Distribution under the Plan but that fails to cash a check within one hundred twenty (120) days of its issuance shall be entitled to receive a reissued check from the Post-confirmation Debtor for the amount of the original check, without any interest, if such Entity (i) requests, in writing, the Post-confirmation Debtor to reissue such check, and (ii) provides the Post-confirmation Debtor with such documentation as the Post-confirmation Debtor requests to verify in her/his sole discretion that such Entity is entitled to such check.  If an Entity fails to cash any check within one hundred twenty (120) days of its issuance or fails to request re-issuance of such check within one hundred twenty (120) days of its issuance, such Entity shall be deemed to have forfeited the amount of the Distribution or Post-confirmation Estate provided for in such check.  Any such forfeited Distributions shall revert to the Post-confirmation Estate and the Claim of any Holder or successor to such Holder with respect to such forfeited Distributions shall be discharged and forever barred, notwithstanding any other provisions in the Plan or any federal or state escheat laws to the contrary.

(b)     In the event that any Distribution to any Holder of an Allowed Claim is returned to the Post-confirmation Debtor as undeliverable, no further Distributions will be made to such Holder unless and until the Post-confirmation Debtor is notified in writing of such Holder's then-current address.  All claims for undeliverable Distributions for which no check is issued, must be made within one hundred twenty (120) days of the issuance of the original check.  After such date, all unclaimed Distributions shall revert to the Post-confirmation Estate and the claim of any Holder or successor to such Holder with respect to such Distribution shall be forfeited, discharged and forever barred, notwithstanding any provisions in the Plan or any federal or state escheat laws to the contrary.  Upon such forfeiture of Cash or other Post-confirmation Estate property, such Cash or Post-confirmation Estate Assets shall be the Real Property of the Post-confirmation Estate.

### PART XVIII
### RETENTION OF JURISDICTION

Notwithstanding entry of the Confirmation Order, or the occurrence of the Effective Date or Consummation of the Plan, the Chapter 11 Case having been closed, or a Final Decree having been entered, the Bankruptcy Court (or the District Court, as the case may be) shall have and retain jurisdiction of matters arising out of, and related to the Chapter 11 Case and the Plan under, and for the purposes of, Bankruptcy Code §§ 105(a), 1127, 1142 and 1144 and for, among other things, the following purposes:

(a)     To consider any modification of the Plan under Bankruptcy Code § 1127 and/or modification of the Plan before õsubstantial consummationö as defined in Bankruptcy Code § 1101(2), and to consider any modification of the Plan to cure any defect or omission, or reconcile any inconsistency in the Plan, the Disclosure Statement or in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order.

(b)     To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any, and allowance of Claims resulting therefrom.

(c)     To (i) hear and determine any Claim or Cause of Action arising in or related to the Chapter 11 Case; and (ii) to adjudicate any Causes of Action or other proceedings currently pending or which may be commenced by the Post-confirmation Debtor after the Effective Date or otherwise referenced herein or elsewhere in the Plan, including, but not limited to, the adjudication of any Causes of Action and any and all õcore proceedingsö under 28 U.S.C. § 157(b), which are or may be pertinent to the Chapter 11 Case and which the Post-confirmation Debtor may deem appropriate to commence and prosecute in support of implementation of the Plan.

(d)     To determine any and all adversary proceedings, applications, and contested matters filed or commenced by the Post-confirmation Debtor after the Effective Date, including, without limitation, any Causes

12

of Action.

(e) To ensure that Distributions are accomplished as provided in the Plan.

(f) To hear and determine any objections to Administrative Expense Claims, to Proofs of Claim, or to Claims and Interests filed and/or asserted both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest, and to allow or disallow any disputed Administrative Expense Claim, Claim or Interest, in whole or in part, and any request for estimation of Claims.

(g) To protect the Post-confirmation Estate from adverse Claims or interference inconsistent with the Plan, including to hear actions to quiet or otherwise clear title to such property of the Post-confirmation Estate based upon the terms and provisions of the Plan, including, without limitation, with respect to the Real Property.

(h) To (i) enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated; (ii) to issue such orders in aid of execution of the Plan as may be necessary and appropriate, to the extent authorized by Bankruptcy Code § 1142; and (iii) to interpret and enforce any Orders previously entered in the Chapter 11 Case to the extent such Orders are not superseded or inconsistent with the Plan.

(i) To hear and determine all applications for compensation and reimbursement of expenses of Professionals under Bankruptcy Code §§ 330, 331, and 503(b) for services rendered and expenses incurred prior or subsequent to the Confirmation Date.

(j) To hear and determine all litigation, Causes of Action and all controversies, suits and disputes that may arise in connection with the interpretation, implementation or enforcement of the Plan, including but not limited to, any and all litigation and/or Causes of Action brought by the Debtor, whether such litigation and/or Causes of Action is/are commenced either prior to or after the Effective Date.

(k) To hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code §§ 345, 505, and 1146.

(l) To enter a Final Decree closing the Chapter 11 Case.

(m) To consider and act on the compromise and settlement of any litigation, Claim against or Cause of Action asserted in connection with the Chapter 11 Case or the Post-confirmation Estate.

(n) To hear and determine all matters and disputes relating to the Auction and the Closing.

(o) Without limiting the generality of the foregoing and notwithstanding the Effective Date and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Post-confirmation Estate after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in connection herewith or therewith, including, without limitation, any Entities' obligations incurred in connection herewith or therewith, including without limitation, any action against the Post-confirmation Debtor or any or all of the Post-confirmation Debtor's professionals or the Post-confirmation Estate, and any action seeking turn over or recovery of assets included in the Post-confirmation Estate.

**PART XIX**
**FINANCIAL INFORMATION**

The Debtor will file with the Bankruptcy Court monthly operating reports. That report will be available upon request

from Debtor‚s counsel. Subsequent Operating Reports may be examined in the office of the Clerk of the Bankruptcy Court, during normal business hours, or are available on line at the Court‚s Web Site through PACER.

### CONCLUSION

No representations concerning Debtor or the Plan are authorized other than as set forth in this Disclosure Statement. Any representation or inducements made to secure acceptances, other than those contained in this Statement, should not be relied upon by any claimants in arriving at their decision as to whether to accept or reject the Plan.  The information contained in this Disclosure Statement has not been subject to a certified audit.  The Debtor is unable to warrant that the information contained herein is without any inaccuracy, although great effort has been made to insure that the information set forth in this Disclosure Statement is true and accurate.

Dated: Huntington, New York
       ~~April 11~~ May 20, 2013

Law Offices of Avrum J. Rosen, PLLC
Attorneys for the Debtor

By:     S/Avrum J. Rosen
        Avrum J. Rosen
        (a member of the firm)
        38 New Street
        Huntington, NY 11743
        (631) 423-8527
        AJRLAW@aol.com

By:_s/ Miriam Chan___
     Miriam Chan, Member

14